**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRENT JACOBY,**

                                        **Plaintiff,**


                        **v.**                                          **9:05-CV-1254**
                                                                        **(FJS/GJD)**

**COUNTY OF ONEIDA NEW YORK;**
**DANIEL MIDDAUGH, Sheriff; PETER**
**PARAVATI, Under Sheriff; HELEN**
**HEIM, Lieutenant, Grievance Coordinator;**
**LT. LIDDY (Jane Doe); SCOTT CAREY,**
**Sgt.; JACK BREEN, Officer; JON HEANEY,**
**Officer; DONALD STOCK, Medical**
**Coordinator; B. STRESSEL (Jane Doe);**
**MARGARET KODYLESKA, Doctor;[1] and**
**YOLLA (Jane Doe),[2]**

                                        **Defendants.**
_____

**APPEARANCES**                                 **OF COUNSEL**

**BRENT JACOBY**
**#511964**
Lanesboro Correctional Institution
P.O. Box 280
Polkon, North Carolina 28135
Plaintiff _pro se_

_____

        [1] The correct spelling of Defendant Margaret Kodyleska's name is "Kordylewska."  The Court will use the correct spelling in this Memorandum-Decision and Order.

        [2] In his affidavit, Defendant Middaugh acknowledges that Defendant "Yolla (Jane Doe)" is "Iola Idzi."  Therefore, the Court will refer to her as Defendant Idzi in this Memorandum-Decision and Order.

**GORMAN, WASZKIEWICZ,**            **BARTLE J. GORMAN, ESQ.**
**GORMAN AND SCHMITT**
1508 Genesee Street
Utica, New York 13502-5178
Attorneys for Defendants County
of Oneida, New York; Middaugh;
Paravati; Heim; Liddy; Carey;
Breen; Heaney; Stock; and
Stressel

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff filed his original complaint in October 2005, and filed an amended complaint in

January 2006.  His claims arise from the conditions of his confinement during his incarceration at

the Oneida County Correctional Facility from May 2004 to February 2005.  In his amended

complaint, Plaintiff asserts ten counts against Defendants: (1) deliberate indifference to his

serious medical needs (herpes outbreak) against Defendants Stressel, Stock, Paravati, Middaugh,

and Oneida County; (2) deliberate indifference to his serious medical needs (psychiatric care)

against Defendants Kordylewska, Idzi, Middaugh, Paravati, Heim and Oneida County; (3) failure

to protect against Defendants Carey, Middaugh, Paravati, Heim, Kordylewska, and Idzi; (4)

excessive force against Defendants Breen and Heaney; (5) unreasonable strip searches and

wrongful classification to deprivation status against Defendants Breen, Heaney, Carey, Liddy,

Middaugh, Paravati, and Oneida County; (6) inadequate access to the courts against Defendants

Middaugh and Paravati; (7) failure to investigate grievances against Defendants Heim, Paravati,

and Middaugh; (8) retaliation against Defendants Breen, Carey, Liddy, Heim, Middaugh, and

Paravati; (9) conspiracy against Defendants Carey, Idzi, Kordylewska, Paravati, Liddy, and

Middaugh; and (10) municipal liability against Defendant Oneida County.  *See, generally,* Amended Complaint.

Plaintiff moved for partial summary judgment with respect to his first, second, fifth, sixth and seventh counts.  In response, Defendants filed a cross-motion for summary judgment with respect to all counts.  After reviewing the parties' submissions and the applicable law, Magistrate Judge DiBianco issued an Order and Report-Recommendation in which he recommended that the Court (1) deny Plaintiff's motion for partial summary judgment and (2) grant in part and deny in part Defendants' cross-motion for summary judgment.  Specifically, with respect to Defendants' cross-motion, he recommended that the Court (1) dismiss the first, sixth, seventh and ninth counts against all Defendants, (2) dismiss the third count to the extent that it alleges a failure-to-protect claim; and (3) dismiss the complaint in its entirety against Defendants Paravati, Heim, Stock, Idzi and Stressel.  *See* Order and Report Recommendation dated March 27, 2008, at 41-42.

Currently before the Court are Plaintiff's and Defendants' objections to Magistrate Judge DiBianco's recommendations.

## II. DISCUSSION

A.      **Standard of review**

In reviewing a magistrate judge's report-recommendation, the district court may decide to accept, reject or modify those recommendations.  *See* 28 U.S.C. § 636(b)(1).  The court conducts a *de novo* review of the portions of the magistrate judge's recommendations to which a party objects.  *See Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).  *De novo* review is not

required, however, if a party fails to file specific objections.  *See Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (noting that where "no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record").  Nor is a court required to conduct *de novo* review where the parties' objections to the magistrate judge's recommendation repeat the arguments that the parties made in the original pleadings.  *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (citations omitted).  Finally, even if the parties file no objections, the court must ensure that the face of the record contains no clear error.  *See Wilds*, 262 F. Supp. 2d at 169 (quotation omitted).

**B.      Plaintiff's first count for deliberate indifference to his serious medical needs related to a herpes outbreak against Defendants Stressel, Stock, Paravati, Middaugh and Oneida County**

Plaintiff objects to Magistrate Judge DiBianco's recommendation that the Court dismiss his first count.  *See* Plaintiff's Objections at 1.  He asserts that the nurses failed to check the sick call box on a daily basis.  *See id.*  To support this claim, he notes that he did not receive treatment until thirteen days after his initial request.  *See id.* at 2.

Plaintiff also contends that there are inconsistencies in the logbooks and that Defendants fabricated those logbooks.  *See id.* at 1-2.  As evidence of this fabrication, Plaintiff asserts that the logbooks did not appear until after Defendants submitted affidavits and that Defendant Heim and the Commissioner of Corrections never mentioned the logbooks in their investigations.  *See id.* at 2.

Finally, Plaintiff contends that Defendant Stock, as the Nurse Coordinator, and Defendant Middaugh, as Sheriff, have a duty to ensure that inmates receive medical treatment and that,

therefore, they share liability.  *See id.*

The Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, protects the rights of pretrial detainees.  *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). As the Second Circuit has noted, although the Supreme Court has not defined the standard of duty for a prison official under the Due Process Clause, it is clear that the rights of a pretrial detainee are "at least as great as those of a convicted prisoner."  *Id.* (citing *City of Revere v. Massachusetts General Hospital*, 463 U.S. at 244, 103 S. Ct. at 293) (other citation omitted).

Deliberate indifference to serious medical needs violates the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Since at a minimum pretrial detainees receive the protections of a convicted prisoner, deliberate indifference violates their rights as well.  Under the Eighth Amendment, deliberate indifference occurs where a prison official recklessly disregards the risk that a detainee's serious medical condition presents.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citations omitted).

To establish a constitutional claim arising out of inadequate medical care, under either the Due Process Clause or the Eighth Amendment, a prisoner must satisfy a two-prong test.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  The first prong of this test requires that the prisoner suffer from a serious medical condition.  *See id.*  The prisoner's medical need must be of a "sufficiently serious" nature.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). A serious need is one that is urgent or "life threatening" and may result in "degeneration or extreme pain."  *Id.*

The second prong of this test includes both a subjective and objective component.  *See Chance*, 143 F.3d at 702.  A prison official must be aware of the facts from which he could draw

an inference that a substantial risk of harm exists, and the official must draw that inference.  *See id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)).  This standard does not require intent, but the prisoner must show more than negligence.  *See Farmer*, 511 U.S. at 835.  A prisoner's disagreement with an otherwise proper course of treatment does not rise to the level of a constitutional violation.  *See Chance*, 143 F.3d at 703.

Plaintiff has not come forward with any evidence to suggest that Defendants were deliberately indifferent to his serious medical needs.  As Magistrate Judge DiBianco found, Plaintiff's allegations about submitting sick call slips are inconsistent.  Plaintiff claims he submitted sick call slips on June 18, 2004, June 23, 2004, and then continued to "put sick calls in daily."  *See* Order and Report-Recommendation at 11-13.  However, the sick call log book shows that Plaintiff submitted four slips simultaneously on June 28, 2004, and three slips on June 30, 2004.  *See id.* at 13.  Moreover, during the period when Plaintiff alleges that he submitted daily sick call slips, his "location history" shows that, on June 24, 2004, he was examined and cleared medically.  *See id.*

Furthermore, on June 30, 2004, Defendant Stressel examined Plaintiff and advised him to continue using hydrocortisone cream, which he had already been using.  *See id.* at 14.  The next day, July 1, 2004, the doctor examined Plaintiff and prescribed Valtrex.  *See id.*  Even after receiving this prescription, Plaintiff continued to file sick call slips on July 1, 2004, and three days later on July 4, 2004.  *See id.*

Although Plaintiff contends, in his objections, that prison officials failed to check the sick call box and fabricate the log book, he supplies no evidence to support these conclusory allegations.  Therefore, because Plaintiff has failed to show that any of the Defendants knowingly

denied him treatment for a serious medical need related to the herpes outbreak, the Court adopts Magistrate Judge DiBianco's recommendation and denies Plaintiff's motion for summary judgment with respect to the first count and grants Defendants' cross-motion for summary judgment with regard to this count.  Furthermore, because this is the only count that implicates Defendants Stressel and Stock, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses the amended complaint in its entirety against these two Defendants.

**C.     Plaintiff's second count for deliberate indifference to his serious psychiatric need against Defendants Kordylewska, Idzi, Middaugh, Parvati, Heim and Oneida County**

Plaintiff alleges that Defendants Idzi and Kordylewska acted with deliberate indifference when they refused to give him medication in August 2004.  *See* Order and Report-Recommendation at 16.  Defendant Kordylewska, who is a physician, began treating Plaintiff in August 2004, although Defendant Idzi, who is a nurse, had treated him in May 2004.  *See id.* at 17-18.  Plaintiff filed a complaint with the New York State Commission of Corrections addressing mental health services, and the Commission found that Defendant Kordylewska had provided inappropriate care.  *See id.* at 16-17.

In response to the Commission's findings, Defendants provide no solid basis for discontinuing Plaintiff's medication.  *See id.* at 17.  Defendant Heim cited Plaintiff's possession of another inmate's medication as the reason for withholding his medication.  *See id.*  However, Defendant Kordylewska's response does not address Plaintiff's medical history or her direct reason for stopping the medication.  *See id.*

In addition, Defendants' responses fail to reconcile their decision to withhold medication

with their knowledge of Plaintiff's mental health history.  In May 2004, the Oneida County

Correctional Facility treated Plaintiff for mental health issues.  *See id.* at 18.  Moreover, Plaintiff

alleges that Central New York Services, the employer of Defendants Kordylewska and Idzi, has

several years of Plaintiff's medical records.  *See* Plaintiff's Objections at 3.

Plaintiff's allegations of deliberate indifference raise genuine issues of fact regarding the

reasons that Defendant Kordylewska withheld medication.  Therefore, the Court adopts

Magistrate Judge DiBianco's recommendation and denies Plaintiff's and Defendants' motions for

summary judgment with respect to the second count against Defendant Kordylewska.

With respect to Defendant Idzi, Plaintiff argues that she prescribed medication for him

but later revoked the prescription after he was found in possession of a cigarette and two Aspirin.

*See* Plaintiff's Objections at 3.  He also contends that Defendant Idzi and Defendant Kordylewska

work as a team.  *See id.*  As Magistrate Judge DiBianco pointed out, however, Defendant Idzi is a

nurse; and, thus, she lacked the authority to make medical decisions directly related to Plaintiff.

*See* Order and Report-Recommendation at 18-19.  Therefore, the Court adopts Magistrate Judge

DiBianco's recommendation and denies Plaintiff's motion for summary judgment and grants

Defendants' motion for summary judgment with respect to the second count and dismisses this

count against Defendant Idzi.

Finally, Plaintiff alleges that Defendants Middaugh, Paravati and Heim ignored his

requests for medical treatment.  *See* Order and Report-Recommendation at 16.  The fact that

Plaintiff wrote letters to these Defendants is insufficient to show that they were personally

involved in the alleged deprivations.  *See Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491

F. Supp. 2d 342, 347 (W.D.N.Y. 2007) (citations omitted); *Smart v. Goord*, 441 F. Supp. 2d 631,

642-43 (S.D.N.Y. 2006) (citation omitted).  Therefore, the Court adopts Magistrate Judge

DiBianco's recommendation and grants Defendants' cross-motion for summary judgment and

dismisses the second count against Defendants Middaugh, Paravati, and Heim.  Finally, to the

extent that Plaintiff challenges the policies and procedures of the Oneida County Correctional

Facility regarding mental health issues, the Court adopts Magistrate Judge DiBianco's

recommendation and denies Plaintiff's and Defendants' motions for summary judgment with

respect to the second count against Defendant Oneida County.


**D.**     **Plaintiff's fourth count for excessive force against Defendant Breen for the incident that occurred on August 15, 2004**

Plaintiff claims that, on August 15, 2004, officers moved him to a protective custody

housing unit because of his communication with a co-defendant.  *See* Order and Report-

Recommendation at 21.  During the move, Plaintiff asserts that he and Defendant Breen engaged

in a verbal confrontation and then Defendant Breen "slammed" him to the ground, kneed him,

and twisted his arms.  *See id.*

After the incident, Defendant Heaney, a Medical Officer, examined Plaintiff, finding that

there were no apparent injuries and that Plaintiff did not complain of any injuries.  *See id.* at 23.

Plaintiff's records show that on August 15, 2004, "medical cleared" him.  *See id.*  Based on the

absence of injury to Plaintiff and his failure to request medical treatment, Magistrate Judge

DiBianco found that the record did not support Plaintiff's claim of excessive force resulting from

this incident.  *See* Order and Report-Recommendation at 24.

In his objections, Plaintiff claims that Defendant Heaney never examined him for injuries

after the August 15, 2004 incident.  *See* Plaintiff's Objections at 3.  Plaintiff also contends that, although he requested medical treatment for bruises and scratches that he received during the incident, he did not receive any medical care.  *See id.* at 4.  Finally, Plaintiff claims that the medical clearance on August 15, 2004, occurred before the incident in question.  *See id.*

The Due Process Clause protects detainees from the use of excessive force.  In assessing such a claim, the court applies the same standard as it does to Eighth Amendment excessive force claims.  *See Gashi v. County of Westchester*, No. 02 CV 6934, 2007 WL 749684, *5 (S.D.N.Y. Mar. 12, 2007) (citation omitted).

An excessive force claim has an objective component, concerning the force the defendant used, and a subjective component, related to the defendant's state of mind.  *See id.* (quoting *Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000)).  The objective component is met if the deprivation was "sufficiently serious;" however, the plaintiff's injuries do not need to be serious or significant.  *See Walsh*, 194 F.3d at 50 (citation omitted).  Force that is more than *de minimis* satisfies the objective component.  *See id.* (citation omitted).

The subjective component requires that the defendant have a "sufficiently culpable state of mind" shown by "wantonness."  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  Wanton conduct hinges on whether the force "was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 7.  This inquiry involves evaluating the need for force, the relationship between that need and the amount of force used, the extent of injury, the threat that the officials reasonably perceive, and any attempt to mitigate the force of the response.  *See id.* at 7 (citation omitted).  A lack of serious injury, although not determinative, is relevant.  *See id.*

Plaintiff has failed to show that the deprivation was sufficiently serious or that Defendant Breen acted with a wanton state of mind.  By his own admissions, Plaintiff suffered no injuries – other than bruises – as a result of the incident.  Moreover, Defendant Breen responded to what he perceived as Plaintiff's insubordination.  Defendant Breen responded quickly, ended the incident, and continued to escort Plaintiff to the housing unit.  Since Plaintiff has failed to raise an issue of material fact with regard to either component of an excessive force claim, the Court adopts Magistrate Judge DiBianco's recommendation and denies Plaintiff's motion for summary judgment and grants Defendants' cross-motion for summary judgment with respect to the fourth count insofar as it relates to the August 15, 2004 incident.

**E.    Plaintiff's fourth count against Defendants Breen and Heaney for using excessive force against him on September 19, 2004**

During a cell search on September 19, 2004, Plaintiff claims that Defendants Breen and Heaney assaulted him.  *See* Order and Report-Recommendation at 21-22.  The alleged assault occurred during the search and subsequent transfer of Plaintiff to a strip cell.  *See id.*

The record contains a medical report that is clearly dated September 20, 2004, at the top of the document.  *See id.* at 24.  This report concludes that Plaintiff suffered no injuries in the September 19, 2004 incident.  *See id.*  However, Plaintiff argues that, at the bottom of the same document, the date appears to be September 26, 2004.  *See id.*  Defendants claim that computer records substantiate that the actual date of the report is September 20, 2004.  *See* Defendants' Objections at ¶ 3.

The actual date of the medical report is significant in determining whether Plaintiff

-11-

showed any injuries on September 20, 2004, the day after the incident in question.  If, as

Defendants claim, the date of the examination report is September 20, 2004, this would be strong

evidence that Plaintiff did not suffer any injuries as a result of the September 19, 2004 incident.

However, if, as Plaintiff claims, the examination did not occur until September 26, 2004, one

week after the incident, it cannot accurately represent any injuries that Plaintiff might have

suffered on September 19, 2004.  Therefore, because there is a dispute about the date of this

medical record which raises an issue of material fact about the extent of Plaintiff's injuries, the

Court adopts Magistrate Judge DiBianco's recommendation and denies Defendants' motion for

summary judgment with respect to the fourth count insofar as it relates to the September 20, 2004

incident.


F.      **Plaintiff's fifth count for unreasonable strip searches and wrongful classification to
        deprivation status against Defendants Breen, Heaney, Carey, Liddy, Middaugh,
        Paravati, and Oneida County**

        Defendants moved for summary judgment on the fifth count only on the basis of qualified

immunity.  Magistrate Judge DiBianco recommended that the Court deny their motion because

there was a question of fact as to whether Defendants were using Plaintiff's deprivation status as

punishment and retaliating against him for his complaints.  *See* Order and Report-

Recommendation at 29-30.

        In their objections, Defendants Carey, Breen and Heaney contend that they acted for

legitimate governmental purposes on September 19, 2004, when they searched Plaintiff's cell,

performed a strip search, and classified him to deprivation.  *See* Defendants' Objections at ¶ 4.

Specifically, Defendant Carey ordered Defendants Breen and Heaney to search for contraband

-12-

because of a tip that Plaintiff was tattooing other inmates. *See id.* During that search, Defendants found contraband in Plaintiff's cell and drugs in his shoe. *See id.* at ¶¶ 5-6.

After that search, Defendants took Plaintiff to the infirmary because they received information that he had a lighter in his rectum. *See id.* at ¶ 7. At the infirmary, Plaintiff was in strip status for approximately five minutes while Defendant Heaney retrieved a blue suit. *See id.* at ¶ 8. Defendants claim that they are entitled to qualified immunity because it was objectively reasonable for them to think that their actions did not violate the rights of Plaintiff as a pre-trial detainee. *See id.* at ¶ 11.

With regard to the searches that they conducted in early December 2004, Defendants also allege that they conducted these searches for a legitimate governmental purpose. *See id.* at ¶¶ 12-13. On December 4, 2004, Defendants searched Plaintiff's cell and found contraband, a Motrin pill. *See id.* at ¶ 14. Plaintiff was charged with threatening officers on December 4th and 6th. *See id.* at ¶¶ 15, 17. Defendants conducted a search on December 5th after Plaintiff's complaint appeared to admit to violations, and Defendants seized further contraband. *See id.* at ¶ 16.

Based on Plaintiff's actions and Defendants' classification policy and procedure, Defendants Carey and Liddy classified Plaintiff to deprivation on December 6, 2004. *See id.* at ¶¶ 19-20. Defendants Carey and Liddy contend that it was objectively reasonable for them to believe that the classification policy did not violate Plaintiff's rights. *See id.* at ¶ 21.

As might be expected, Plaintiff provides a different version of the facts and reasons for the search and his placement into deprivation status. He claims that, on September 19, 2004, Defendants Heaney and Breen searched his cell, strip searched him, and made him take off his clothes at the infirmary. *See* Order and Report-Recommendation at 26. Plaintiff claims that

-13-

Defendants then left him in the cell naked for two hours and later placed him in a strip cell with only a blanket. *See id.* at 27. Furthermore, Plaintiff contends that, in November 2004, Defendants searched his cell as punishment and that, in early in December 2004, they searched his cell for retaliatory reasons. *See id.* at 27-28. Plaintiff also claims that, on December 6, 2004, Defendants placed him in deprivation status for about a month in retaliation for his complaints. *See id.* at 28. Finally, Plaintiff asserts that, as a result of his complaints about the deprivation policy to the Commission of Corrections, the Oneida County Correctional Facility stopped using deprivation status orders. *See id.*

Qualified immunity protects government officials from suit where the official performed discretionary duties that did not violate statutory or constitutional rights of which a reasonable person would have known. *See Lipton v. County of Orange*, 315 F. Supp. 2d 434, 460 (S.D.N.Y. 2004). This doctrine shields officials from liability for civil damages as long as their conduct does not violate clearly established rights. *See id.* Thus, officials are entitled to qualified immunity if "it was objectively reasonable for them to believe their acts did not violate those rights." *Weyant*, 101 F.3d at 857 (citation omitted).

The conduct for which Defendants seek qualified immunity involves strip searches and the use of deprivation status. The question focuses on whether Defendants strip-searched Plaintiff and placed him in deprivation status as punishment or retaliation. Pretrial detainees, such as Plaintiff, "'may not be punished in any manner – neither cruelly and unusually nor otherwise.'" *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (quotation omitted). If a condition of confinement is not reasonably related to a legitimate governmental objective, an inference arises that it is punitive. *See Bell v. Wolfish*, 441 U.S. 520, 537-38 (1979) (citation omitted).

-14-

Furthermore, in the context of a search, the court must consider the scope, manner, reason, and place of the search.  *See id.* at 559 (citations omitted).

The Court agrees with Magistrate Judge DiBianco that the Court cannot resolve the issue of whether Defendants are entitled to qualified immunity at this time because there are unresolved issues of fact regarding the reasonableness of at least some of their actions. Therefore, the Court adopts Magistrate Judge DiBianco's recommendations and denies Defendants' cross-motion for summary judgment with respect to the fifth count.

**G.      Plaintiff's sixth count for lack of access to the courts against Defendants Middaugh and Paravati**

Prisoners have a constitutional right of access to the courts that prison officials may not impair.  *See Bounds v. Smith*, 430 U.S. 817, 821-22 (1977).  This right entitles prisoners to assistance from prison officials or adequate law libraries.  *See id.* at 828 (footnote omitted).  A denial-of-access-to-the-courts claim must show actual injury, and the inadequate access must be the cause of the injury.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).  In other words, the inadequate access must frustrate or hinder the prisoner from bringing a legal claim.  *See id.*

In this case, Plaintiff has not articulated an injury that he suffered as a result of inadequate access to the courts.  Plaintiff states that prison officials denied him access to the law library and did not provide legal services.  *See* Plaintiff's Objections at 4.  He further alleges that, had he received library materials or help to complete forms, he could have sought relief.  *See id.* at 5. However, Plaintiff does not explain how a lack of access prevented him from seeking relief. Since Plaintiff has failed to show that the alleged inadequate access caused him any actual injury,

the Court adopts Magistrate Judge DiBianco's recommendation and grants Defendants' cross-motion for summary judgment with respect to Plaintiff's sixth count.

**H.     Plaintiff's eighth count alleging retaliation against Defendants Breen, Carey, Liddy, Heim, Middaugh and Paravati**

Magistrate Judge DiBianco recommended that this Court dismiss Plaintiff's retaliation claims against Defendants Liddy, Heim, Middaugh and Paravati because they were conclusory. *See* Order and Report-Recommendation at 37-40.  However, he recommended that this Court deny Defendants' cross-motion for summary judgment with respect to Plaintiff's retaliation claims against Defendants Carey and Breen.  *See id.* at 40-41.

With regard to Plaintiff's retaliation claim against Defendant Liddy, Magistrate Judge DiBianco found that this claim was unsupported.  *See id.* at 38-39.  In his objections, Plaintiff argues that he did, in fact, write a grievance against Defendant Liddy for placing him on deprivation status and that this grievance resulted in Defendant Middaugh being ordered to stop all deprivation policies.  *See* Plaintiff's Objections at 5-6.  Plaintiff also asserts that he wrote grievances against Defendant Liddy for refusing to give him "fola, foil, and Hipaa information," and for placing him on deprivation status for retaliatory and punitive reasons.  *See id.*  Plaintiff believes that Defendant Liddy put him on deprivation status because Defendant Carey had "issues" with him.  *See id.*  Finally, Plaintiff contends that Defendant Liddy also retaliated against him by not allowing him to have writing materials and not allowing any other officers to give him writing materials without prior approval.  *See id.*

In their objections, Defendants Carey and Breen argue that they acted for legitimate

-16-

governmental purposes and not to retaliate against Plaintiff.  *See* Defendants' Objections at ¶¶ 4-

5.  Defendants contend that they searched Plaintiff's cell on September 19, 2004, based on

information from an informant that Plaintiff was tattooing inmates; and that, during that search,

they found contraband in Plaintiff's cell and in his shoe.  *See id.* at ¶¶ 4-6.

A prison official's retaliation against a prisoner for exercising his constitutional rights

gives rise to a constitutional violation.  *See Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

Since retaliation claims are "easily fabricated," a prisoner must state non-conclusory allegations.

*See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citation omitted).  A prisoner must show

that his conduct was constitutionally protected and that his conduct was a substantial factor for

the prison officials' adverse action.  *See id.* (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002))

(other citation omitted).  Prison officials may avoid liability by showing that they would have

taken the same action even if the protected conduct had not occurred.  *See id.* (quoting *Graham v.*

*Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

Although Plaintiff claims retaliation against Defendant Liddy, he does not provide any

complaints that he filed against her.  *See* Order and Report-Recommendation at 37-38.

Furthermore, Plaintiff complained to Defendant Liddy about not having writing materials.  *See*

*id.*  Although Plaintiff's access to writing materials was limited while he was on deprivation

status, Plaintiff received these materials on December 15, 2004.  *See id.* at 38-39.

In his objections, Plaintiff again challenges his placement on deprivation status.  *See*

Plaintiff's Objections at 6.  The Court has not dismissed this claim.  However, because Plaintiff

has not shown that his constitutionally protected conduct motivated Defendant Liddy's allegedly

adverse action, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses

Plaintiff's eighth count against Defendant Liddy.

Plaintiff also alleges that Defendant Heim retaliated agains him by ignoring his grievances.  *See id.* at 39.  The record contains no evidence to support this claim.  Therefore, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses Plaintiff's retaliation claim against Defendant Heim.

As Magistrate Judge DiBianco noted, there is also no support in the record for Plaintiff's retaliation claims against Defendants Middaugh and Paravati.  *See id.* at 39-40.  Plaintiff claims that these Defendants tried to curtail his access to the courts and retaliated against him for writing grievances.  *See id.*  Plaintiff, however, has failed to show that Defendants Middaugh and Paravati knew about any of his conduct or took any action against him.  *See id.*  Therefore, the Court adopts Magistrate Judge DiBianco's recommendation and dismisses Plaintiff's retaliation claims against Defendants Middaugh and Paravati.

Finally, Plaintiff alleges that Defendant Carey and Breen retaliated against him by search his cell and strip-searching him.  *See id.* at 40.  Since the Court has denied Defendants' cross-motion for summary judgment with respect to these searches, their validity will be determined at trial.  Therefore, the Court adopts Magistrate Judge DiBianco's recommendation and denies Defendants' cross-motion for summary judgment with regard to Plaintiff's retaliation claims against Defendants Carey and Breen.

I.     **Plaintiff's ninth count alleging conspiracy against Defendants Carey, Heim, Breen, Stock Idzi, Kordylewska, Paravati, Liddy and Middaugh**

A claim of conspiracy must contain facts that "establish an agreement among the alleged

conspirators." *Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, *6 (W.D.N.Y. May 23, 2007) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.), *cert. denied*, 506 U.S. 819, 113 S. Ct. 66, 121 L. Ed. 2d 33 (1992)) (other citation omitted).  A plaintiff must provide details of when and where the conspiracy took place and not rely on conclusory allegations.  *See id.*

Plaintiff asserts that Defendants Carey, Heim, Liddy, Middaugh, Paravati, Breen, Stock, Idzi, and Kordylewska engaged in a conspiracy against him.  Specifically, he alleges that these Defendants conspired to subvert the facts surrounding the claims related to excessive force, deprivation orders, and deliberate indifference.  *See* Plaintiff's Objections at 7-8.  Despite these claims, Plaintiff provides no facts or details that would establish the existence of an agreement among these Defendants.  Since Plaintiff's claims are nothing more than conclusory allegations, the Court adopts Magistrate Judge DiBianco's recommendation and grants Defendants' cross-motion for summary judgment with respect to Plaintiff's ninth count.

**J.**    **Plaintiff's tenth count for municipal liability against Defendant Oneida County**

The Court has already determined that Plaintiff's second count and fifth count remain against Defendant Oneida County based on the theory of municipal liability.  The Court therefore dismisses Plaintiff's tenth count as redundant.

**K.**    **Magistrate Judge DiBianco's other recommendations**

The Court has reviewed all of Magistrate Judge DiBianco's recommendation, including those to which neither party objected.  With respect to those recommendations, which the Court

has not already addressed, the Court adopts those recommendations for the reasons that

Magistrate Judge DiBianco stated in his Order and Report-Recommendation.

## III. CONCLUSION

After carefully reviewing the entire file in this matter, including Magistrate Judge

DiBianco's Order and Report-Recommendation dated March 27, 2008, the parties' objections

thereto, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge DiBianco's March 27, 2008 Order and Report-

Recommendation is **ADOPTED IN ITS ENTIRETY**; and the Court further

**ORDERS** that Plaintiff's motion for partial summary judgment is **DENIED**; and the

Court further

**ORDERS** that Defendants' cross-motion for summary judgment is **GRANTED IN**

**PART** and **DENIED IN PART**; and the Court further

**ORDERS** that Plaintiff's **first count** for deliberate indifference to his serious medical

needs related to a herpes outbreak is **DISMISSED against all Defendants**; and the Court further

**ORDERS** that Plaintiff's **second count** for deliberate indifference to his serious medical

problems related to his psychiatric care is **DISMISSED** against **Defendant Idzi**; and the Court

further

**ORDERS** that Plaintiff's **third count** insofar as it asserts a **failure-to-protect** claim is

**DISMISSED against all Defendants**; and the Court further

**ORDERS** that Plaintiff's **fourth count** insofar as it is based on the **August 15, 2004**

**incident** is **DISMISSED against all Defendants**; and the Court further

**ORDERS** that Plaintiff's **sixth count** is **DISMISSED against all Defendants**; and the Court further

**ORDERS** that Plaintiff's **seventh count** is **DISMISSED against all Defendants**; and the Court further

**ORDERS** that Plaintiff's **eighth count** is **DISMISSED against Defendants Liddy, Heim, Middaugh and Paravati**; and the Court further

**ORDERS** that Plaintiff's **ninth count** is **DISMISSED against all Defendants**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge DiBianco to schedule a final pretrial conference.[3]

**IT IS SO ORDERED.**

Dated: September 11, 2009
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

_____

[3] Based on this Memorandum-Decision and Order, the following claims against the following Defendants remain for trial:

(1) Second Count against **Defendants Kordylewska** and **Oneida County**

(2) Third Count against **Defendant Carey** for his failure to intervene in the September 19, 2004 incident

(3) Fourth Count against **Defendants Breen** and **Heaney** related to the September 19, 2004 incident

(4) Fifth Count against **Defendants Breen and Heaney** related to unreasonable searches; **Defendants Carey and Liddy** related to the deprivation orders; and **Defendants Middaugh and Oneida County**

(5) Eighth Count against **Defendants Breen and Carey**. The Court notes that on page 41 of the Order and Report-Recommendation, Magistrate Judge DiBianco states that this count remains against Defendants Breen and Heaney. However, it is clear from a review of the amended complaint and other references in the Order and Report-Recommendation that the eighth count properly remains against Defendants Breen and Carey, not Defendant Heaney.

-22-